IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JRNA, INC., d/b/a, UNCLAIMED FREIGHT | : : : | |
| Plaintiff | : : | CIVIL ACTION |
| vs. | : : : | NO. 07-cv-01995 |
| DEBRA G. SNOW, EDWARD A. SCHANEBERGER, and JAMESTOWN INVESTMENTS AND CONSTRUCTION COMPANY | : : : : : | |
| Defendants | : | |

MEMORANDUM OPINION AND ORDER

GOLDEN, J.                                                                                              AUGUST 2, 2007

      Before the Court is plaintiff's motion for a preliminary injunction.  Because plaintiff has shown that it is likely to succeed in its underlying action and that it is likely to suffer irreparable harm without injunctive relief, the motion is granted.  The Court recounts its findings of fact and conclusions of law below.  An appropriate Order enjoining the sale or encumbrance of defendants' real estate follows this Opinion.  The Court notes that it has vacated earlier orders freezing defendants' bank accounts.

**Findings of Fact and Procedural History**

      Plaintiff is a discount furniture retailer with stores in New Jersey and Pennsylvania. Plaintiff employed defendant Snow for almost twenty years, making her company comptroller in 2002.  In 2006, Snow announced her plans to leave the company and move to New York with her partner, defendant Schaneberger.  Schaneberger is a real estate developer who "flips" properties, meaning that he buys, renovates, and sells low-cost real estate within a short time frame to

maximize profits.

Plaintiff began a transition to a new comptroller, eventually hiring Deborah Miskiv. Miskiv and Snow worked together for several months, with Snow commuting frequently from her home in Cherry Creek, New York to plaintiff's offices. Snow remained employed by plaintiff until March, 2007.

Upon review of plaintiff's accounts, Miskiv began to notice discrepancies and unusual expenses. Plaintiff maintains a "sweep" account with Wachovia Bank; store deposits are sent to Wachovia, but the account is "swept" of funds weekly. This account is not used for operating expenses. Instead, operating expenses are typically withdrawn from another account with Lafayette Ambassador Bank. In March, 2007, Miskiv noted that the sweep account had a number of ATM withdrawals and debit purchases. Upon further investigation, she found that Snow had applied for and received a Wachovia ATM card for plaintiff's account, which neither Snow's supervisor nor plaintiff's majority owner authorized. Charges totaling more than $50,000 were made to entities with which plaintiff had no business relationship. Finally, money from plaintiff's Wachovia account paid for the registration of a fictitious name with the Pennsylvania Department of State, Jamestown Investments and Construction Company, which defendants Snow and Schaneberger had created to manage real estate development projects.

Plaintiff conducted an internal investigation and retained outside accountants. Other accounting and financial discrepancies were uncovered. Snow had told Miskiv that plaintiff had been audited, and owed $40,000 in sales tax to the Commonwealth. Miskiv later discovered that Snow had remitted only $20,754.33 to the Commonwealth, with the additional $20,000 wired to an account with Northwest Savings Bank. A review of plaintiff's bank records showed that

significant sums were continuously wired to unknown accounts at Northwest Savings Bank, without authorization from plaintiff's CEO or owner.

Finally, Miskiv received a call from Carter Lumber, a home improvement store in New York, regarding past due account balances. Plaintiff has no presence in New York, and thus no need for an account with Carter. An application for a Carter Lumber account supplied plaintiff's EIN number, and was purportedly signed with the signature stamp of plaintiff's majority owner. Defendant Schaneberger is listed on the Carter Lumber application as an authorized user of the account.

Together, the internal and external reviews conclude that over $265,000 had been removed from plaintiff's Wachovia account via ATM withdrawals, more than $46,000 had been charged at Carter Lumber, and wire transfers totaling more than $157,000 had been made from plaintiff's Lafayette accounts into accounts with Northwest Savings Bank. Plaintiff contends that defendants used the funds to purchase and renovate real estate in New York.

Having discovered these irregularities, plaintiff alerted the police. A criminal investigation is ongoing. A local newspaper ran an article detailing plaintiff's allegations on March 30, 2007. Defendants placed three of their New York properties on the market for sale within days of the disclosure of the criminal case in the newspaper.

Concerned that defendants were attempting to dissipate assets, plaintiff made an *ex parte* motion for a temporary restraining order on May 17, 2007. The Court granted the motion, and held a conference call with all parties on May 25, 2007. To that point, defendants had not retained counsel. When defense counsel entered an appearance, the Court scheduled a hearing on the motion for a preliminary injunction, which began on June 15, 2007 and continued on June 19,

2007.

Plaintiff called a number of witnesses at the hearing held on June 15 and 19, 2007. New comptroller Deborah Miskiv testified, as did CEO Andrew Eskow and Joseph Colabella, plaintiff's majority owner. Daniel Molfino, a New York realtor who has worked with defendants, testified about the listing of their properties. The Court credits the testimony of Miskiv, Eskow, and Colabella that the ATM withdrawals, wire transfers, and purchases at issue in this case were not authorized.

Plaintiff also produced copious exhibits. These include copies of defendants' statements from Northwest Savings Bank, which show wire transfers from plaintiff's accounts; copies of Carter Lumber invoices, with defendant Schaneberger's signature; statements from plaintiff's Wachovia accounts; and photographs, authenticated by Northwest Savings Bank security specialist Steven Westerberg, which show a woman identified by Andrew Eskow as defendant Snow withdrawing funds from an ATM with plaintiff's Wachovia card.

Defendants did not appear at the hearing, but submitted affidavits. The Court determined that it could not accept affidavits relating to facts in dispute without permitting cross examination by plaintiff's counsel. By letter, defense counsel informed the Court that defendants chose to withdraw their affidavits. Thus, defendants presented no direct evidence in the case.

Plaintiff's underlying complaint, also filed on May 17, 2007, contains a count under the Racketeer Influenced and Corrupt Organizations (RICO) act, as well as a number of legal and equitable claims under Pennsylvania law, including unjust enrichment, accounting, constructive trust, breach of fiduciary duty, conversion, fraud, and civil conspiracy. For purposes of the motion for a preliminary injunction, the Court will consider only the strength of plaintiff's claim

for unjust enrichment.[1]

## Discussion and Conclusions of Law

*Requirements for a Preliminary Injunction*

A party seeking a preliminary injunction must show that he or she is likely to succeed on the merits of the claim, and that he or she is likely to suffer irreparable harm without injunctive relief. *Allstate Ins. Co. v. Davidson Medical Group*, 2004 U.S. Dist. Lexis 20987, at *7 (E.D. Pa. Oct. 18, 2004) (internal citations omitted). A court must also consider, in applicable situations, whether injunctive relief is in the public interest and whether there will be greater harm to the non-moving party if the injunction is granted. *Id.* To prevail, the party seeking the preliminary injunction must establish that all of the factors weigh in his or her favor. *Chicago Title Ins. v. Lexington & Concord Search and Abstract, LLC*, 2007 U.S. Dist. LEXIS 27682, at *22 (E.D. Pa. Apr. 13, 2007) (internal citations omitted).

Plaintiff has asked the Court to freeze defendants' assets; therefore, plaintiff must meet requirements beyond those for a preliminary injunction. Plaintiff must also show that it has: "(1) asserted a cognizable equitable claim; (2) demonstrated a sufficient nexus between that claim and specific assets of the defendant which are the target of the injunctive relief; and (3) shown that the requested interim relief is a reasonable measure to preserve the *status quo* in aid of the ultimate equitable relief claimed." *Allstate Ins. Co*, 2004 U.S. Dist. Lexis 20987, at *7-8 (internal citations omitted).

The Court concludes that plaintiff has satisfied the threshold requirements for a

---

[1] The Court notes that defendants question whether plaintiff has pled conspiracy or fraud with sufficient specificity. The question is valid, but attacks on the sufficiency of a complaint should be brought through a motion to dismiss.

prejudgment freeze of defendants' assets.  Plaintiff has asserted a cognizable equitable claim for unjust enrichment.  *Bunnion v. CONRAIL*, 108 F.Supp. 2d 403, 427 (E.D. Pa. 1999).  The unjust enrichment claim is directly linked to the assets plaintiff seeks to freeze, as it is plaintiff's contention that defendants invested plaintiff's assets in real estate in New York.  *F.T. Internat'l v. Mason*, 2000 U.S. Dist. LEXIS 14979, at *2 (E.D. Pa. Oct. 11, 2000).  Finally, the asset freeze is a reasonable measure to preserve the *status quo* in service to the ultimate equitable relief requested; plaintiff seeks an injunction now so that the constructive trust ultimately sought will have value.  *Allstate Ins. Co.,* 2004 U.S. Dist. Lexis 20987, at *10.

     Plaintiff must also meet the requirements for a preliminary injunction.  To satisfy the first prong of the test, likelihood of success on the merits, plaintiff need only establish a *prima facie* case, not a certainty that he or she will ultimately prevail.  *Highmark, Inc. v. UPMC Health Plan, Inc.,* 276 F.3d 160, 173 (3d Cir. 2001).  Plaintiff has made out the elements of an unjust enrichment claim under Pennsylvania law: "(1) plaintiff conferred benefits upon defendant; (2) defendant realized those benefits; and (3) defendant accepted and retained the benefits under circumstances in which it would be inequitable for defendant to retain them without payment of value."  *Allstate Ins. Co.,* 2004 U.S. Dist. LEXIS 20987, at *9; *see also Schenck v. K.E. David, Ltd.,* 666 A.2d 327, 328 (Pa. Super Ct. 1995).  When a party acts wrongly or fraudulently to acquire property, as is alleged to have occurred here, a claim for unjust enrichment will lie.  *F.T. Internat'l v. Mason,* 2000 U.S. Dist. LEXIS 14979, at *5.

     In this case, plaintiff has produced substantial evidence to suggest that defendants acted wrongfully to acquire plaintiff's property.  Plaintiff has documented wire transfers of significant sums of money from its bank accounts into the accounts of defendants.  Plaintiff has documented

purchases of more than $46,000 from Carter Lumber; signatures on the invoices suggest that defendant Schaneberger was involved in those purchases. Plaintiff has documented ATM withdrawals and purchases from its Wachovia sweep account. Bank security photos show that defendant Snow made at least some of those withdrawals, and account records show that some of those payments were made to entities with no connection to plaintiff's business. Most importantly, plaintiff's witnesses have testified that these expenditures were unusual and unauthorized. Thus, plaintiff appears to have satisfied the first prong of the test for a preliminary injunction, success on the merits, as to at least the unjust enrichment count of its complaint.[2]

As to the second prong of the test for injunctive relief, plaintiff has also shown that it will suffer irreparable injury without injunctive relief, as there is evidence that defendants are dissipating their assets. A probable, unsatisfied money judgment constitutes a form of irreparable injury. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205-06 (3d Cir. 1990). When defendants liquidate their assets and convert them to cash, courts have found that plaintiffs faced the prospect of dissipation and an unsatisfied judgment, and thus irreparable harm. *See Allstate Ins. Co.,* 2004 U.S. Dist. LEXIS 20987 at *13-14; *F.T. Int'l*, 2000 U.S. Dist. LEXIS 14979, at *6. On the other hand, in cases in which the potential judgment represents a small percentage of a defendant's total assets, a preliminary injunction may not be appropriate. *Chicago Title Ins. Co.*, 2007 U.S. Dist. LEXIS 27682, at *42-43.

Because it appears that defendants are liquidating the disputed assets and do not have other means to satisfy a judgment, the instant case falls into the first category of cases cited

---

[2] In its proposed conclusions of law, plaintiff asserts that it is likely to succeed on the merits of its RICO case. The Court concludes that, given the complexity of the RICO statute, it is by no means clear that the RICO claim will withstand scrutiny.

above and a preliminary injunction is appropriate. Realtor Daniel Molfino testified about defendants' listing of their real estate in New York within days of the publicity of the criminal case against them. Plaintiff has shown that its assets may have been used to purchase and renovate the real estate. A review of defendants' bank accounts shows that little of the cash transferred to Northwest Savings Bank from plaintiff's accounts remained as of the end of March, 2007. While it appears that more than $150,000 was transferred, defendants' balances are in the range of a few hundred to slightly more than one thousand dollars. Defendants have made frequent withdrawals in the thousands of dollars, with a notable withdrawal of $25,000 on the last day of February, 2007.

The bank records show a rough correlation between the wire transfers made from plaintiff's account into defendants' account, and defendants' business expenditures. For example, during December, 2005, defendant Jamestown's account shows a wire transfer of $7,474.58 from plaintiff's account; over the course of the month, defendants expended $7,038.60. In February, 2006, Jamestown's account received a little more than $8,000 in wire transfers from the plaintiff, and defendants withdrew approximately $9,000. Thus, it appears that cash from plaintiff's account has been either dissipated or reinvested into real estate. Without injunctive relief preventing defendants from disposing of the real estate, plaintiff faces the likely prospect of irreparable harm.

Finally, the Court has considered whether the injunction is in the public interest, and whether the injunction will cause greater harm to the non-moving party. The Court concludes that the injunction serves the public interest by discouraging the misappropriation of funds by business employees. *See Allstate Ins. Co.*, 2004 U.S. Dist. LEXIS 20987, at *15.

Moreover, the Court acknowledges its duty to inflict on defendants no more harm than necessary to prevent irreparable injury to the plaintiff. *Hoxworth*, 903 F.2d at 186. Thus, the value of the real property enjoined from sale and encumbrance does not exceed the value of the anticipated judgement. *Id.* at 199. The Court has fashioned its Order to provide for ordinary living expenses for defendants. In addition, the Court invites defense counsel to propose modifications in the event of hardship to the defendants. The Court intends to minimize harm to defendants; however, the harm that plaintiff would suffer without injunctive relief outweighs the harm to defendants.

Plaintiff's request for a preliminary injunction is granted. An appropriate Order follows.